IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICE A. AGOSTINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-180 |
| | ) | |
| FRIENDSHIP VILLAGE OF SOUTH HILLS, | ) | Judge Conti |
| LIFE CARE COMMUNITIES, INC., | ) | Magistrate Judge Hay |
| RUSSELL FIREWICZ, JOAN AMON, | ) | |
| JEAN STEINER, | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is respectfully recommended that plaintiff's Motion for Leave to Amend Complaint [Dkt. 21] be granted, and that the motion to dismiss submitted on behalf of defendants [Dkt. 18], as it pertains to the Second Amended Complaint, be granted in part and denied in part.

II. REPORT

A. Background

Plaintiff, Alice A. Agostini ("Agostini"), filed a complaint in this matter on February 14, 2007, bringing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), alleging that defendants discriminated against her because of her gender and age while she was employed at Friendship Village of South Hills ("Friendship"), which ultimately resulted in her being terminated from her job on August 3, 2005. Defendants filed a Motion for More Definite

Statement on April 23, 2007, arguing that plaintiff had not only failed to plead separate legal theories in separate counts but failed to allege when any of the alleged conduct occurred, what conduct was being cited as the basis for each claim and which defendant was allegedly responsible for the conduct complained of [Doc. 5].  The motion was granted on July 24, 2007 [Doc. 13], and on August 27, 2007, plaintiff filed an Amended Complaint in which she asserts claims against Friendship under Title VII (Count I), the ADEA (Count II), and the PHRA (Count III), as well as claims for "aiding and abetting" employment discrimination under the PHRA against Russell Firewicz ("Firewicz") (Count IV), Jean Steiner ("Steiner") (Count IV), and Joan Amon ("Amon") (Count VI) [Doc. 17].

Presently before the Court is defendants' motion to dismiss portions of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), in which they ask the Court to dismiss plaintiff's claims that are premised upon events and conduct for which recovery is time-barred.  Defendants also seeks to have plaintiff's claims for punitive damages under the PHRA dismissed as well as plaintiff's claims for compensatory damages under the ADEA, arguing that such damages are not available under the respective statutes.

In response, plaintiff has conceded that she is not entitled to punitive damages under the PHRA or compensatory damages under the ADEA, but contends that her remaining claims, even those that are seemingly time-barred, are properly before the Court because defendants' conduct was part of an "ongoing and continuous practice of harassment and discrimination" which, plaintiff asserts, is described in more detail in the Second Amended Complaint ("SAC") that she has submitted to the Court along with a motion for leave to amend [Doc. 22, pp. 1-2; Doc. 21].  Defendants oppose plaintiff's motion for leave to amend arguing

2

not only that the amendment fails to cure the deficiencies complained of and, thus, would be an exercise in futility, but that they would be prejudiced by having to file yet another motion to dismiss.

    B.  <u>Plaintiff's Motion to Amend Complaint</u>

The Federal Rules of Civil Procedure provide that, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires ...." Fed. R. Civ. P. 15(a). Moreover, as recently stated by the Court of Appeals for the Third Circuit,

> Leave to amend must generally be granted unless equitable considerations render it otherwise unjust. *Foman [v. Davis]*, 371 U.S. [178,] 182 [1962]; *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility. *Lorenz*, 1 F.3d at 1414 (*quoting Foman*, 371 U.S. at 182 ...). We have consistently recognized, however, that "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Id. (quoting Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

<u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 204 (3d Cir. 2006). <u>See</u> <u>Long v. Wilson</u>, 393 F.3d 390, 400 (3d Cir. 2004) ("[A]bsent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment") (internal quotations and citations omitted).

Because it does not appear that any of the factors that would normally justify denying a motion to amend are present in this case, plaintiff's motion is properly granted.

Although defendants argue that plaintiff should not be granted leave to file the SAC because it is largely duplicative of the Amended Complaint, and thus fails to cure the deficiencies cited by defendants in their motion to dismiss, defendants' argument assumes that the Court would have agreed with their assessment of the Amended Complaint and granted their motion in its entirety. While the Amended Complaint is certainly not a model of clarity, and while many of defendants' objections to it are well-founded, it nevertheless appears that some of plaintiff's claims, such as those alleging a hostile work environment, would have survived defendants' motion.

Moreover, defendants' argument appears to overlook the changes – few as they may be – that plaintiff has made in the SAC. Indeed, the documents appear to differ in that plaintiff has not only added language which augments her hostile work environment claims brought at Counts I, II and, in particular, at Count III, but she has provided a specific date regarding her complaints of unlawful discrimination brought against Amon at Count VI. In addition, the SAC eliminates the punitive and compensatory damage claims that plaintiff concedes are properly dismissed.

In addition, because the SAC is largely duplicative of the Amended Complaint, to the extent that defendants' motion to dismiss portions of the Amended Complaint would have been granted, those same arguments appear applicable to the SAC which the Court has addressed below. As such, defendants will not be prejudiced by permitting plaintiff to file the SAC as it is unlikely that defendants will have to file another motion to dismiss. Indeed, defendants have already addressed the changes proposed in the SAC in their memorandum opposing plaintiff's motion for leave to amend which the Court has taken into consideration. It therefore appears that the more judicious course is to permit plaintiff to file the SAC and address the arguments set

forth by defendants in the pending motion to dismiss as they pertain to the allegations set forth in the SAC.[1]

C. Defendants' Motion to Dismiss

The United States Supreme Court has recently held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007) (rejecting the long-adhered to 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In assessing the sufficiency of the complaint, the Court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.), cert. denied, 474 U.S. 935 (1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126. 143 (3d Cir. 2004), citing Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. The question is not whether the plaintiff will prevail in the end but, rather, is whether the plaintiff is entitled to offer evidence in support of his or her claims. See Oatway v. American International Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

---

[1] Of course, should defendants feel that it is necessary to raise new arguments regarding the SAC that have not been addressed herein, they should be permitted to file another motion.

Under Title VII and the ADEA, a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). If, however, the claimant has also initiated a complaint with a parallel state agency, the period for filing the charge with the EEOC is extended to 300 days from the date of the alleged unlawful employment practice. Ruehl v. Viacom, Inc., 500 F.3d 375, 382-83 (3d Cir. 2007). The period within which to file the administrative complaint is treated as a statute of limitations and, thus, any unlawful practices which are alleged to have occurred outside the filing period generally are not actionable. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002)("Morgan"); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001).

In the instant case, it appears undisputed that plaintiff filed a complaint with the EEOC, which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC") on September 1, 2005. SAC ¶ 2. As such, only those claims which occurred within the prior 300 days, or after November 5, 2004, are actionable. Defendants argue that because plaintiff has failed to plead when precisely much of the alleged discriminatory conduct occurred, to the extent that the acts complained of predate November 5, 2004, they are time-barred.

Although the Court agrees with defendants to the extent that plaintiff has alleged discrete acts of discrimination, we part company on those claims where plaintiff has complained of conduct which arguably created a hostile work environment. In those instances, plaintiff's invocation of the continuing violation theory, however sketchy, appears to render many of her

6

claims timely.[2]

In Morgan, the United States Supreme Court drew a distinction between discrete acts that are individually actionable and acts that are not, but which may be aggregated to make out a hostile work environment claim. Morgan, 536 U.S. at 113-115. Discrete acts, or ones which should suggest to the plaintiff that he or she was subjected to unlawful discrimination, must be raised within the requisite limitations period. Id. at 113. Citing to Morgan, the Court of Appeals for the Third Circuit identified termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation as discrete acts of discrimination. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). The Court also noted that such "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id., citing Morgan, 536 U.S. at 113. Rather, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." Id.

In contrast, hostile work environment claims involve "repeated conduct" that so permeates the workplace with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of employment. Morgan, 536 U.S. at 115-116, quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted). Under

---

[2] To the extent that plaintiff's argument that defendants' conduct was part of an "ongoing and continuous practice of harassment and discrimination," suggests that her claims have been timely filed under the continuing violation theory rather than as a hostile work environment claim, the Court of Appeals for the Third Circuit has recognized "a natural affinity between the two theories." West v. Philadelphia Electric Co., 45 F.3d 744, 755 (3d Cir. 1995). See Blum v. Council Rock School District, 2003 WL 1873617 *4 (E.D. Pa. Feb. 14, 2003) (Finding that the plaintiff's hostile work environment claims were sufficiently pled to support equitable tolling based on the continuing violation theory). See Riddell v. Slippery Rock University, 2006 WL 2773414 *12 (W.D. Pa. Sept. 25, 2006) (Implicitly recognizing that the concept of a continuing violation is inherent in claims for hostile work environment).

such circumstances, the unlawful employment practice does not occur on one day but occurs over a period of time; it is the cumulative effect of individual acts that provide the basis for the claim. Id. at 115. Thus, even those acts which occurred outside the statutory time period are actionable "so long as they are linked in a pattern of actions which continues into the applicable limitations period." O'Connor v. City of Newark, 440 F.3d at 127. See McDowell v. Potter, 2008 WL 239439 *4 (W.D. Pa. Jan. 29, 2008), quoting Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 785 (W.D. Pa. 2000), aff'd, 276 F.3d 579 (3d Cir. 2001) ("[T]he underlying inquiry is 'whether the plaintiff should have asserted her rights and filed with the EEOC within the 300 days, or whether circumstances were such that she could not have known the conduct complained of would continue. Thus, the [continuing violation] theory is seldom applicable where the discriminatory act is a failure to hire, promote or train.'").

    Here, it appears that plaintiff has brought claims against Friendship at Counts I and II based on discrete acts of discrimination as well as claims of hostile work environment. With respect to the former, plaintiff has alleged that defendant engaged in unlawful employment practices in violation of Title VII by unlawfully terminating her employment on August 3, 2005; by requiring her to work overtime in February of 2005, when male nurses did not have to work overtime; by assigning her an increased work load in February, March and April of 2005, while male employees were allowed to do less work; and that when she complained to Amon, Amon retaliated against her by giving her "several counseling reports." SAC ¶¶ 13c, 13g, 13i, 13k. In support of her discrimination claims brought under the ADEA, plaintiff alleges that defendants required her to work overtime in February of 2005, when younger nurses did not have to work overtime; that she was given an increased work load in February, March and April of 2005, while

8

younger employees were allowed to do less work; and that Steiner fabricated a complaint about plaintiff's work in July of 2005. SAC ¶¶ 20c, 20f.

These incidents, like those described in O'Connor, appear to be discrete acts that should have suggested to plaintiff that she was being subjected to unlawful discrimination at the time they occurred and, thus, are only actionable if they occurred after November 5, 2004. Because plaintiff has alleged that all of these incidents occurred in 2005, they appear to be timely.[3]

Defendants also argue that because plaintiff has failed to allege the timing of many of the events giving rise to her hostile work environment claims to the extent those actions predate November 5, 2004, they are properly barred as well. We disagree.

First, as previously discussed, by their very nature hostile work environment claims involve repeated harassment that occurs over a period of time and are based on the cumulative effect of that continued harassment. Morgan, 536 U.S. at 115. As such, the Supreme Court has found that:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time

---

[3] Although plaintiff has not alleged precisely when she complained to Amon or when Amon retaliated against her by issuing counseling reports, any retaliatory conduct necessarily occurred in 2005 since the conduct underlying plaintiff's complaints took place in 2005. To the extent, however, that plaintiff is alleging that Amon wrongly disciplined her for complaints of discriminatory conduct prior to November 5, 2004, those claims are time-barred, as are any other claims that plaintiff seeks to pursue revolving around discrete acts of discrimination occurring prior to November 5, 2004. See O'Connor, 440 F.3d at 127.

9

> period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.
>
> * * *
>
> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

Morgan, 536 U.S. at 116-118.

In the instant case, plaintiff has generally alleged that defendants engaged in unlawful employment practices "[f]rom 2002 and continuing to August 3, 2005;" that during that time she "was subjected to a continuous and ongoing hostile work environment;" that defendants "continuously discriminated against [her] by subjecting her to ... a hostile work environment;" and that she suffered severe pain and suffering cause by the "almost daily exposure to the hostile work environment during her employment." SAC ¶¶ 13, 13a, 13b, 14e, 20, 20a, 20b, 21e. More specifically, plaintiff has alleged that Firewicz "would continually touch Plaintiff's and other female employee's breasts" and that "[t]his type of behavior frequently occurred from the time period between June 14, 2005 until Plaintiff's termination." Id. at ¶ 13h. Plaintiff also alleges

that another employee, Richard Eckert, "would brush up against Plaintiff's buttocks when she bent over, engage in unwanted sexual touching, make comments about her breasts and other body parts, use vulgar sexual talk and make blunt vile gestures including grabbing his crotch and exposing his buttocks," and that in a particular incident, in July of 2005, Mr. Eckert looked at Plaintiff's breasts and commented that Millie Martin's breasts were larger. Id. at ¶ 13j. Plaintiff has further alleged that Amon would insult and talk down to plaintiff and other older staff members while praising younger employees; that in February of 2005, Amon compared plaintiff to younger employees stating that plaintiff worked slower; that Steiner and Mr. Eckert would help younger nurses complete their duties but not plaintiff; and that plaintiff was not permitted to go on rounds with the Doctor, but younger nurses were allowed to do so. Id. at ¶¶ 20d-20f.

Viewed in a light most favorable to Ms. Agostini, these allegations appear sufficient to state a claim for hostile work environment under Title VII and the ADEA.[4] While it is true that plaintiff has not alleged a specific date and time for each act defendants allegedly committed that may have contributed to the alleged hostile work environment, she has alleged conduct that would seemingly contribute to a hostile work environment and has alleged that at least some of the alleged conduct occurred after November 5, 2004. Because plaintiff has alleged that at least one act giving rise to her hostile work environment claims under Title VII and the ADEA occurred within the filing period it appears that those claims are also timely.

---

[4]In order to prove a claim of hostile work environment, a plaintiff must show that (1) she suffered intentional discrimination because of her membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and, (5) the existence of respondeat superior liability. West v. Philadelphia Electric Co., 45 F.3d at 753.

Moreover, it cannot be disputed that at the 12(b)(6) stage of the proceedings, the Third Circuit requires "only a 'short and plain statement' to show a right to relief, not a detailed recitation of the proof that will in the end establish such a right." Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 564 (3d Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (in which the United States Supreme Court held that an employment discrimination complaint need not set forth specific facts establishing a *prima facie* case of discrimination). Thus, in the context of a hostile work environment, the complaint need only put the defendant on notice that the plaintiff was subjected to a hostile work environment; she need not set forth her proof or demonstrate the elements of such a claim. See Gupta v. Sears, Roebuck and Co., 2007 WL 2253609 *5-6 (W.D. Pa. Aug. 3, 2007). See also Gallman v. Bethanna Agency, 2004 WL 1622041 (E.D. Pa. July 20, 2004) (Finding that plaintiff's allegations were sufficient to survive a motion to dismiss even though he failed to describe the frequency or the severity of the alleged harassing conduct).

Defendants also argue that plaintiff's state law claims brought against Friendship, Firewicz, and Steiner at Counts III, IV and V of the SAC should be dismissed to the extent that plaintiff seeks recovery for alleged incidents of discriminatory conduct that occurred outside the PHRA's applicable filing period.

Under the PHRA, a claimant must exhaust her administrative remedies by filing a charge of discrimination with the PHRC before filing an action in court. 43 Pa. C.S.A. § 962(c). See Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 469 (3d Cir. 2001) ("Burgh"). The PHRA further provides that the charge of discrimination must be filed with the PHRC within 180 days of the allegedly discriminatory conduct. 43 Pa. C.S.A. §§ 959(h). As

previously discussed, plaintiff here filed a charge of discrimination with the PHRC on September 1, 2005. As such, only those claims based on conduct that occurred within the prior 180 days, or after March 5, 2005, are actionable.

In Count III of the SAC plaintiff has alleged only that Friendship engaged in unlawful employment practices from "1999 and continuing through August 3, 2005," without reference to any particular conduct or date on which they may have occurred. SAC ¶ 29. Thus, to the extent that plaintiff is seeking recovery under the PHRA for alleged discrete acts of discrimination that occurred prior to March 5, 2005, they are time-barred. See Morgan, 536 U.S. at 113.

Plaintiff, however, has also alleged at Count III of the SAC, that defendants subjected her to "a continuous and ongoing hostile work environment." SAC ¶ 30. Although plaintiff has not reiterated the precise basis for her hostile work environment claim at Count III, she has incorporated her complaints outlined in Counts I and II in which, as discussed above, she has sufficiently stated a claim for hostile work environment. Thus, viewing the SAC as a whole and in the light most favorable to plaintiff, it appears that her claims for hostile work environment under the PHRA are timely provided that one act contributing to the claim occurred within the filing period or after March 5, 2005. Because plaintiff has alleged that Friendship's unlawful employment practices continued through August 3, 2005, that Firewicz and Mr. Eckert continually engaged in offensive behavior such as touching plaintiff's breasts, engaging in unwanted sexual touching, making vulgar sexual remarks, and making gestures such as grabbing his crotch and exposing his buttocks, that certain of the offensive acts took place in June, July and August of 2005, and that management not only knew of, but participated in, the harassment,

it appears that plaintiff's claim for gender based hostile work environment under the PHRA is timely.

None of the acts complained of that may have contributed to a hostile work environment based on plaintiff's age, however, appear to have occurred after March 5, 2005. Indeed, other than alleging that in "February of 2005," Amon stated that plaintiff worked more slowly than younger employees, plaintiff has failed to identify when any of the discriminatory acts that allegedly contributed to an age related hostile work environment occurred. SAC ¶ 20d. Because February of 2005, is outside the PHRA's limitations period, it appears that plaintiff's age based hostile work environment claim is untimely and properly dismissed.

Plaintiff has also brought a claim against Firewicz under the PHRA for aiding and abetting discrimination at Count IV of the SAC, which defendants also contend is properly dismissed to the extent plaintiff seeks recovery on events that occurred prior to March 5, 2005. Having incorporated the allegations set forth at Counts I, II and III, plaintiff's claims against Firewicz are that he would continually touch plaintiff's breasts, which frequently occurred between June 14, 2005 and plaintiff's termination on August 3, 2005, and that he was also aware of, but did nothing to stop, the alleged unlawful conduct by Mr. Eckert which continued into July of 2005. SAC ¶¶ 13h, 13i, 13k, 36. As previously discussed, these allegations appear to support a claim for hostile work environment based on plaintiff's gender and, thus, are actionable provided at least one offensive act took place after March 5, 2005. Because plaintiff has alleged that certain acts took place after June 14, 2005, and into July of 2005, plaintiff's claims for gender based hostile work environment against Firewicz appear to be actionable.

Plaintiff has also alleged that after plaintiff complained of the unlawful

14

discrimination and harassment, Firewicz retaliated against her by "writing her up" for no reason and by eventually having her terminated. SAC ¶ 36. These acts constitute discrete acts of discrimination and, thus, must have occurred after March 5, 2005 to be actionable. Although plaintiff was terminated in August of 2005, which is clearly within the limitations period, plaintiff has not alleged when she complained to Firewicz or when he filed the misconduct reports against her. As such, to the extent these events took place before March 5, 2005, they are untimely and cannot provide the basis for plaintiff's retaliation claims against Firewicz under the PHRA.

Plaintiff has brought similar claims against Steiner at Count V of the SAC. Having again incorporated the allegations set forth in the previous paragraphs of the complaint, plaintiff alleges that Steiner violated the PHRA by contributing to a hostile work environment by overlooking the sexually offensive acts committed by Firewicz and Mr. Eckert described above which, according to the SAC, continued after June 14, 2005 and into July of 2005. SAC ¶¶ 13h, 13k, 36. Because, viewed in the light most favorable to plaintiff, it can be inferred that Steiner was aware of, but nevertheless chose to overlook, the alleged sexual harassment that occurred after March of 2005, which is clearly within the limitations period, plaintiff's claim for gender based hostile work environment against Steiner also appears to be timely.

In an apparent effort to state a claim for age based hostile work environment against Steiner plaintiff has also alleged that Steiner helped younger employees complete their duties. Even if assisting other, younger employees perform their duties could give rise to a hostile work environment claim, plaintiff has not alleged when Steiner engaged in such activity. See West v. Philadelphia Electric Co., 45 F.3d at 753 (setting forth elements of a hostile work

15

environment claim). Thus, to the extent Steiner assisted younger staff members prior to March 5, 2005, plaintiff's age based hostile work environment claim is barred.

Plaintiff, however, has also alleged that Steiner committed discrete acts of discrimination, only some of which appear to be timely. Specifically, plaintiff alleges that Steiner treated her more harshly than male and younger employees by requiring her to work overtime in February of 2005, and by assigning her a double work load in February, March and April of 2005; that in July of 2005, Steiner wrongly accused plaintiff of not doing rounds properly; and that Steiner retaliated against her when she complained by "writing her up" for no reason and by having her terminated. SAC ¶¶ 13i, 20f, 37.

Because plaintiff's complaint of having to work overtime and being assigned a double work load in February of 2005, occurred more than 180 days before she filed the charge of discrimination, those claims are outside the limitations period and are properly barred. Moreover, plaintiff has failed to allege when she complained to Steiner of the alleged discrimination and harassment or when Steiner "wrote her up" for doing so and, hence, to the extent these events occurred prior to March 5, 2005, they are barred as well. Conversely, plaintiff's allegations that Steiner assigned her the work of two people in March and April of 2005, was wrongfully accused of doing rounds improperly in July of 2005, and retaliated against by being terminated in August of 2005, appear to be within the filing period and are properly before the Court.

Finally, defendants ask that plaintiff's claims brought against Amon at Count VI of the SAC, wherein she has alleged that Amon aided and abetted discrimination under the PHRA, should be dismissed because plaintiff has failed to identify any specific instances of

16

discrimination by Amon occurring within the 180 day filing period.

Review of the SAC shows that plaintiff has brought claims of hostile work environment and discrete claims of discrimination against Amon as well. With respect to the former, plaintiff has specifically alleged that Amon perpetuated a hostile work environment as she was aware of the sexual harassment allegedly engaged in by Firewicz and Mr. Eckert, which occurred after June 14, 2005 and into July of 2005, but did nothing to stop it; that Amon would talk down to plaintiff and insult her and other older staff members; and that in February of 2005, Amon compared plaintiff to younger employees noting that plaintiff worked slowly and that younger employees had their work done by noon. SAC ¶¶ 13h, 13j, 13k, 20d.

With respect to plaintiff's claims for hostile work environment based on her gender, plaintiff has clearly alleged at least one occurrence that took place after March 5, 2005, rendering her claims in this regard timely. Plaintiff, however, has not indicated when Amon purportedly talked down to and insulted her or other older employees and, to the extent she has provided a date that Amon compared her unfavorably to younger staff members, that appears to have occurred in February of 2005, which is outside the filing period. It therefore appears that to the extent plaintiff has otherwise stated an age-based hostile work environment claim, it is untimely and properly barred.

Finally, plaintiff has also alleged that Amon engaged in discrete acts of discrimination by retaliating against plaintiff by "writing her up" and eventually having her terminated after plaintiff complained about the alleged discrimination and harassment in July of 2005. SAC ¶ 40. Although plaintiff has not alleged precisely when she was "written up" by Amon, in light of plaintiff's allegations that it was in retaliation for complaints she made in July

17

of 2005, Amon's conduct necessarily occurred sometime thereafter which would render plaintiff's retaliation claim in this regard timely. Moreover, because it is undisputed that plaintiff was terminated in August of 2005, which was well after March 5, 2005, her claim that Amon retaliated against her by having her terminated appears timely as well.

III.     CONCLUSION

For these reasons, the Court recommends that plaintiff's Motion for Leave to Amend Complaint [Dkt. 21] be granted. It further recommends that the motion to dismiss submitted on behalf of defendants [Dkt. 18], as it pertains to the Second Amended Complaint, be granted to the extent that plaintiff seeks to raise claims under Title VII and the ADEA based on discrete acts of discrimination occurring prior to November 5, 2004, and to the extent she has raised claims under the PHRA for discrete acts of discrimination that occurred prior to March 5, 2005, as they are untimely. With respect to plaintiff's claims of gender based hostile work environment under Title VII, the ADEA and the PHRA, it is recommended that defendants's motion be denied as it appears that at least one act contributing to the alleged hostile environment occurred within the relevant limitation periods. Similarly, with respect to plaintiff's claims of hostile work environment based on age, plaintiff's claims brought under Title VII and the ADEA are timely and defendants' motion in this regard is properly denied. Plaintiff, however, has failed to allege any acts that contributed to a hostile work environment based on her age that occurred after March 5, 2005, and, thus, it is recommended that defendants' motion be granted as to plaintiff's age based hostile work environment claims brought pursuant to the PHRA. Finally, because plaintiff has abandoned her claim for compensatory damages under the ADEA and her

claim for punitive damages under the PHRA, it is recommended that those portions of defendants' motion in which they seek to have those claims dismissed, be dismissed as moot.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

*/s/  Amy Reynolds Hay*
United States Magistrate Judge

Dated: 29 February, 2008

cc: Hon. Joy Conti Flowers
United States District Judge

All counsel of record by Notice of Electronic Filing